Good morning. May it please the Court, my name is Richard Grossman on behalf of the appellant, SciTech Engineering Materials. With the Court's permission, I'd like to reserve two minutes for rebuttal. The controversy before us today is relatively straightforward. To justify its grant of a Rule 12b6 motion to dismiss, the Court below impermissibly made factual determinations that were not supported by the pleadings and improperly drew factual inferences against the responding party, Appellant SciTech. In fact, the Court below went so far as to infer the existence of an antitrust claim that was never asserted and is contrary to the express claim for relief in SciTech's second amended complaint. We submit that such a procedure is clearly erroneous and the antitrust claim must be reversed. Now, as you know, SciTech's complaint alleges that the defendant carbon fiber producers illegally agreed to fix the prices of their carbon fiber products and sold them to SciTech at artificially inflated price levels. SciTech used the carbon fiber it purchased to manufacture a composite material called prepreg, which it sold in the downstream market to largely the aeronautics industry for use primarily in military and commercial aircraft. Now, SciTech's complaint alleges antitrust violations only in the upstream carbon fiber market. SciTech's single claim for relief, an excerpt of Record 183, says defendants and their co-conspirators, quote, illegally allocated and divided carbon fiber sales, customers and markets, and artificially fixed carbon fiber prices and controlled other terms of trade for the carbon fiber they sold. There is no mention whatsoever of illegal conduct in the downstream prepreg market. The word prepreg does not even appear in the 183. Nevertheless, the court below improperly inferred that there also must have been price fixing in the downstream prepreg market and used that improper inference to justify dismissal of SciTech's entire case based on the assertion that it lacked antitrust injury. So how did the district court attempt to justify its improper decision to draw factual inferences against the corresponding party in the 12B6 motion to dismiss? Well, first, the court below pointed out that three of the many companies alleged to have acquiesced in the carbon fiber price fixing conspiracy were prepreg manufacturers. The court then improperly concluded that no prepreg manufacturer could possibly acquiesce in a carbon fiber price fixing conspiracy unless they were also fixing prepreg prices. That is pure speculation. It was purely an inference. Unfortunately, the court ignored the fact that each of those three prepreg manufacturers had a unique economic incentive to acquiesce in the carbon fiber price fixing conspiracy. Hexcel was one of them. Hexcel was a prepreg manufacturer that was in the process of negotiating the purchase of the largest carbon fiber producer in the United States, Defendant Hercules Incorporated. It completed the purchase in 1996. Counsel, if the district court is right, so do you actually contest that there is no conspiracy going on in the prepreg market? That's correct, Your Honor. And is that in your complaint? No, it is not. We did not plead in our complaint, or we did not allege in our complaint what we were not alleging. We were alleging a complaint in the anti-competitive activity in the upstream carbon fiber market. My understanding of the pleading rules is that we don't need to plead what we're not alleging. And that's Okay, but you did have some allegations in your complaint that led the district court to believe that there was some conspiracy in the prepreg market. There were some factual assertions, for background purposes only, that said that there were exchanges of pricing information among some of the prepreg manufacturers at some of these meetings. And in some of those paragraphs, you alleged that there was pricing information that was exchanged in both the carbon fiber and the prepreg market. There may have been. And the district court evidently took from that that you were alleging that there was an exchange of pricing information in the carbon fiber market. That was the basis for your antitrust complaint. And then she extrapolated from that to say, and in the same paragraph, you said there was an exchange of pricing information in the prepreg market, and therefore there must be some kind of conspiracy going on in that market as well. And that might have been the court's reasoning process. However, that would be erroneous, because the Supreme Court's landmark Monsanto case says that the mere exchange of pricing information is not price fixing. It is not illegal. There must be more, and there must be allegations of more, in order to have a sustainable claim for price fixing under our antitrust laws. And you made those additional allegations with respect to the carbon fiber market. Absolutely. You did not make those allegations with respect to the prepreg market. Absolutely, Your Honor. What exactly was your antitrust injury from conspiracy in the carbon fiber market? When you are a purchaser of price-fixed carbon fiber, then you have purchased a product for your manufacturing process at an illegally inflated value. In other words, the prices that Scitec paid for the carbon fiber that it needed to manufacture prepreg were artificially inflated by the price-fixing institution. Okay. But this is where Judge Cooper was concerned, apparently. She took the statement that you made about the prepreg market and said, just by logical inference, okay, if the plaintiff was, they're artificially inflated carbon fiber here, and that is essential to the manufacturing of prepreg. If it, in that same product, and sells it downstream, how then is it injured? And I would be interested in your answer to that. How is it injured from an antitrust perspective, if she's right about that inference? Well, there are two things that happen when a company's costs are increased, two things that can happen. One is that it eats those costs. Because the market won't bear the sale. Exactly. The other is that it passes those costs on downstream through increased prices of its own. Under clear federal law, the Federal Antitrust Statutory Scheme, the Sherman Act, does not recognize as a defense the possibility that a purchaser of price-fixed materials might have increased its prices and passed that along downstream. I didn't find any federal case that suggested if there was an allegation of price-fixing at one level, that it automatically applied to a second level in this case. Do you know of any case that said that? There is no such case, Your Honor. Absolutely. And that's because direct purchasers under our Antitrust Scheme, under the Sherman Act, are the only purchasers that can sue for antitrust violations. I take that back, for price-fixing antitrust violations. They're the only ones that have been harmed. If there is price-fixing going on in the carbon fiber market, and Zytec is merely passing those costs on, has it suffered antitrust injury? It has. That's correct. Under the Sherman Act, it has. Because this is a process I understand. Because that is the law of What kind of damages does it get if it's been passing on, if it hasn't suffered any loss in profits? It's considered to, under clear Supreme Court law, the direct purchaser is deemed to have suffered all of the damages, and it is no defense that it perhaps raised its own prices. And that's largely in the Ark America case and others. It's largely because under the Sherman Act, the Supreme Court has decided that we're not going to inquire as to what happens downstream. In certain states, there is an inquiry as to what happens downstream. They're called repealer states. But under our current antitrust statutory scheme, as The direct purchaser is the one that suffered the damage, and we don't go beyond that. I do have one question, though. You're obviously familiar with Twombly. I am. If we agree with you, and if we remand this to the district court, you're familiar with the Amaral cases, citing the Associated General Contractors of Southern California. The Amaral case lists five findings that the district court has to make to show that there is standing. So far as I can tell, I guess because the district court went off the way it did, it's never considered factors two through five. If we send it back, wouldn't we also have to instruct the district court that it must make findings of that nature to make certain that you're a proper plaintiff, just standing to sue under this? Well, I haven't memorized what factors three through five are, but clearly there has to be antitrust injury, and there has to be standing under relevant I'll read them to you. They're real short, because I'm interested in your thought. Two through five are the directness of the injury, the speculative measure of the harm, the risk of duplicative recovery, and the complexity and apportioning damages. Those are the requirements that have to be met. And tying back to Twombly, it just seems to me that that may be something that would have to be done. Do you have any thoughts on that? I have no problem with that. There's very clear antitrust precedent that says that the purchaser of price-fixed goods has both antitrust injury and standing to assert those claims. I have no problem with that at all, Your Honor. I see my time is up. Hopefully I can have a little time at the end. May it please the Court, Jeffrey Shohet on behalf of Hercules. As I think the Court's aware, it's the plaintiff's burden to state a plausible claim for relief under Twombly and other Federal case law. Among that, or part of that obligation is to state its, and prove its own standing to proceed as an antitrust plaintiff and establish antitrust injury. Now what I'd like to do is refer to some of the paragraphs in the complaint. And there were a couple that I found in going over and preparing and reading the record. It's amazing what you discover when you read the whole record before an appeal argument that weren't picked up in the briefing or in the judge's decision. And one picks up on a question that I think Judge Smith asked. And that's paragraph 41, which is ER198 of the complaint. Because it plainly alleges, not simply, that pricing information was exchanged, which counsel argues doesn't mandate an inference that there was a price-fixing agreement. It states that Hexel, Hercules, and another prepregger engaged in a market allocation. It specifically alleges antitrust conduct in furtherance of a conspiracy. And because it alleges Hexel and Hercules' participation, it had to be before 1996, which was when Hexel was a pure prepreg supplier. The only product that Hexel could allocate at that point under this market allocation agreement would be prepreg. So I'd ask the Court's attention to that provision. But what the ER site was 198, and what was the paragraph of the complaint? It's paragraph 41 of the second amended complaint, the operative complaint, Your Honor. Okay. Thank you. Well, I got that. It says this. Throughout the relevant time period, the defendants in Europe, including Hercules, agreed to and did engage in a continuous course of action to establish orderly marketing of the carbon fiber industry by which they maintained fixed or increased the price of carbon fiber. And you're saying, well, because one of them, Hercules, was a prepreg that reflects on the plaintiff. And, you know, that's just one paragraph, and as I understand it, there were almost 140 paragraphs, and nowhere does the defendant clearly allege a price-fixing conspiracy in the prepreg market. Well, I'm not sure if I — excuse me. I'm going to respond to that. Yeah, well, that's okay. I want you to. I want to, but — and also, I don't know if I gave the right page number. It was 149 of the ER — That's the ER site I have. Yes. 149. Which is paragraph 41, which does allege a market allocation. Okay. Your Honor, there's another thing that I want to call to your attention on that. Paragraph 17 of the complaint alleges that this was alleging the same underlying anti-competitive activity as was alleged in the underlying Beck case. Which is the QUITAM action? One of the QUITAM actions. That's right. Now, the class definition, which is reflected at page 198 of this record, was the class definition in the other underlying complaint, states that carbon fiber is defined to be both fiber and prepreg. In other words, the entirety of the complaint — I'm sorry. Who's got that definition? That's in the class definition in the Thomas case, another of the consolidated — But not in the complaint. No, not in site text. You're adopting a definition that's found someplace else and applying it here. Well, here's the way I get there. You may not — this may not persuade you, but let me at least explain what my argument is. In their complaint here, paragraph 17, they say this is the same underlying anti-competitive activity as was alleged in the Beck case, which was one of the underlying antitrust cases. Is that correct, Justice? Can I just stop you for just one second, and I apologize? There are a plethora of actions involved here, and it would be helpful to me to just get a little mini-description. As I recall, there were some state claims filed as well. Yes. When were they filed, and what did they deal with? Counsel in CITEK, there's two cases in which this claim is asserted. Right. There's this case here — Two state claims? There's this case, which is the Sherman Act claim. Right. And then they filed, at virtually the same time, a parallel state court action, CITEK did, against Hercules and BP Amico, alleging this claim under the Cartwright Act, and they presumably did it — they staked in their purpose. The state Cartwright Act. A state Cartwright Act claim. It's the same claim here. Right. But what I'm referring to now is there were predecessor antitrust claims involving the end users and direct purchasers, not CITEK. Right.  — These are the users of pre-PREG, or of the carbon fiber. It was direct purchasers of carbon fiber as defined to be both carbon fiber and pre-PREG in that case. That's shown in the exhibit — in the excerpt of Record 198. Okay. And where did the KEATAM cases come in? The KEATAM cases were just another case involving HEATAM allegations, but involving the same underlying anti-competitive — Were they part of the same complaint, where they consolidated — No. I think they were handled all before Judge Cooper. This is years ago. Okay. All of these were resolved and settled before the CITEK cases. So how do you — how do you end up with this complaint still being viable? It sounds like almost all the issues have been litigated. They have. So what — this is just a little tip of the iceberg that's left? Is that what it boils down to? Judge Cooper — and that was part of Judge Cooper's — she says, look, I've seen this case for five years. I know what this case is about. This case is about a conspiracy that involves carbon fiber and pre-PREG, as alleged. And she heard all the evidence. And what they did after that — they were a defendant. CITEK was a defendant pre-PREG in that case. And because they weren't part of that case, they decided that after it was all over, they were going to say — and they have said in this case and the other case, look, I was a defendant in that case, but really there was a conspiracy, but I think it only involved carbon fiber. And so I want to get back some of the money. I mean, they were dragged through that case, paid a lot of money, paid some settlement money, which is interesting. Are there any collateral estoppel issues involved in this case that tie into the other cases or not? Well, nothing was litigated to conclusion. They were all settled. Okay. But the only thing I would say is CITEK paid some money to settle the underlying case. And if it was a victim of a conspiracy rather than a participant, I guess there's no inferences, again, that you can draw from somebody paying money to settle. But the point is, I guess I'd answer your question, yes, the case was completely litigated before Judge Cooper, and they were all settled. There were several complaints. What bothers me, someone, I want you to address. I get the feeling, listening to your argument, that Judge Cooper relied on factual matters, not necessarily on the complaint. And it really might have been more appropriate for a summary judgment. But I have trouble with her saying that there's no standing relying on these other cases which are not in the pleadings and inferences from facts in the other cases which may be in dispute. Well, I can't speak to what was in her mind. All I know is that she did litigate these cases for five years. What she said and the basis for her ruling, of course, is the basis on which we submit that the case should be dismissed and affirmed. It has nothing to do with the underlying matters that are outside the court. And I want to add to Judge Bright's point and his question, which is that as I look at this and I look at paragraph 17 and I look at paragraph 41, the two paragraphs that you referred us to, you have provided us with lots of additional background about the Beck versus Hexel litigation. You've provided us with additional, when you referred to paragraph 41, you wanted to bring in additional cases. That doesn't sound like a Twombly question at all. That sounds like a summary judgment. That doesn't sound like something that's appropriate for a 12B6. That's not a deficiency in this complaint. It may be a deficiency in the ultimate merits of the case, but it's not a deficiency in the pleadings. It's a deficiency because they have an obligation in the pleadings to state a claim for relief that supports their standing. And because the pleading, their pleading, completely picks up, mirrors, and adopts a conspiracy, a unitary conspiracy, a single conspiracy that involves both pre-pregnancy  I've read the complaint. I understand you bring a lot more to the table here, and you may bring a lot of litigation and a lot of factual knowledge, and perhaps Judge Cooper did as well, but that's not what the complaint says. Well, the complaint says, the complaint says that pre-preggers were involved, that there was a market allocation as reflected in paragraph 41 involving pre-preggers, that pre-preggers exchanged price information and participated in conspiratorial meetings with their competitors present in the room. I mean, and I'd like to respond a little bit to Judge Smith's point about what kind of a conspiracy could we be talking here and what's plausible, because you cannot establish your standing with implausible inferences and implausible arguments. Courts under Twombly are required or permitted to reject implausible and conclusory matters drawn from facts. So the conclusion, the correct, and I think the only inference permissibly drawn from the pleading, when you adopt, when you look at the facts as pled, and the facts as pled say that a bunch of manufacturers of carbon fiber and pre-preg and one non-affiliated manufacturer of pre-preg sat in a room and exchanged their prices, both pre-preg and carbon fiber, and they did this to engage in a conspiracy to further their profits. Yet somehow, you – the pleading is supposed to properly state a claim for a – for a And all of that was in paragraph 41? No, no. It's in the paragraphs 41. There are several other. I only referred to – I was going to – I wasn't going to go back over the paragraphs 113, 123, 161, 179, and the point I was making on paragraph 17, Your Honor, is that 17 basically adopts – it says this is the, quote, same underlying conduct, anti-competitive conduct, as the Beck case. And the Beck case, clearly, and everybody admits, was a conspiracy alleged to have involved both pre-preggers and carbon fiber manufacturers. And the class definition in the Beck case defined carbon fiber, and that's at ER page 198, defined carbon fiber to include both carbon fiber and pre-preg. My point here, Your Honor, is the complaint that they picked up, which is a mirrored copy of the underlying complaint in Beck, is clearly a complaint involving a single conspiracy. And I would submit that that's the only conspiracy that makes sense. And I wanted to pick up on Judge Smith's question, because they would have you believe – and, again, we can reject implausible explanations to support standing. They would have you believe, the Court to believe, that all of these meetings exchanging all of this price information and market allocations that included affiliated and unaffiliated pre-preggers were in furtherance of the fixing of a carbon fiber price. Well, they sell the fiber to themselves. The affiliated manufacturers, of course, sell the fiber to their downstream affiliates. They make their profit on selling it to an end user. They don't profit by raising the price of carbon fiber to themselves. Their answer to that is, well, we sell higher priced fiber to unaffiliated, to others who buy it. Now, even if you accept the notion that that's a reason to fix the antitrust law, to violate the antitrust laws, that your main market is to sell through your own affiliates, but that somehow you can make some profit by selling to the non-affiliates, so let's violate the antitrust laws. And even if you accept the fact that the pre-preggers somehow were necessary to this conspiracy, and their pricing information somehow furthered that conspiracy, so that's why they were in the room. Even if you accept all of that – and I suggest that we're getting pretty close to implausible here, in terms of what really could have happened – how could this conspiracy have put any money in the pockets of these conspirators? Because if they raise the price to just the unaffiliates, their downstream companies, which include competitors in the pre-preg market, now have a lower cost model in an already constrained market downstream, where there's too many buyers, and not enough – there's too few buyers, and too much capacity, for this conspiracy to work, they've got to pass along this higher price to these unaffiliates, who can then pass it on to the market. That's the only place any money's going to come from that's going to make this conspiracy viable. That is, the so-called non-affiliated companies like SciTech, we're going to sell them higher-priced fiber, but because we're a single enterprise, we still have the lower cost base with our affiliated companies. It's not going to work. If the economists were here – and I realize we're pretty far afield into potential questions of fact – but I tell you, you think about it, it's an implausible conspiracy. Of course the pre-preggers had to be in the room. Of course they had to fix the price of pre-preg if it was going to work, because otherwise there would be competition at the lower cost base in the pre-preg market, except for the unaffiliateds that they want to pass this higher price to, and it's going to collapse. I don't say you should believe that as a matter of undisputed fact. I say you should believe that the reason the pre-preggers were there is the inference that you have to draw here, because they were there to fix the price of pre-preg, and it had to be fixed for this to work. And that's all Judge Cooper did. Judge Cooper didn't – Judge Cooper didn't throw out a case that was potentially meritorious. She adopted the reasonable inference from the pleading. Now, Counselor, you've exceeded your time by almost five minutes. I'm sorry. Thank you. Thank you. Counselor, I will allow you – I believe you've consumed most of your time. I will allow you two minutes. Your Honor, I think Mr. Show has just made Judge Bidey's point, and that is that this is – there are tremendous issues of disputed fact that need to be resolved, perhaps at summary judgment stage, but more probably at trial. And that's because he has presented a convoluted theory, economic theory, as to how this conspiracy worked that is not supported by the record, that was not relied upon at all by Judge Cooper in dismissing the case. He says – he points out that at paragraph 17 of the complaint, ER 144, Cytek mentioned that some of the conduct involved in the Beck case involves the same underlying competitive conduct at issue in this complaint. That's true. Some of that conduct alleged in Beck was the underlying conduct in this complaint. And – but paragraph 17 of the complaint that he was referring to has to do with the definition of BP Amoco, one of the defendants in the case, which was by definition under the terms of the complaint only a carbon fiber manufacturer. This paragraph has nothing to do with pre-prank. And so when you look at this in the context of where it is found in the complaint, it says nothing about adopting all of the factual allegations or all of the conclusions in the preceding litigation in the Beck case. It never says that. And in fact, in our reply brief at pages 10 and 11, we pointed out to you that to the extent that we borrowed any language from the prior Beck case for purposes of our complaint here, we changed the language. We took out all of the allegations involving pre-prank conspiracy. We deleted that and limited it exclusively to the carbon fiber market. That is – we pointed that out by – through a side-by-side comparison in our brief, our reply brief at pages 9 and 10. Now, the – Counsel, you're over your time. Is there a last point you'd like the Court to have? The only last point that I would like to add is this. And that is the point that under our Copperweld, the Supreme Court's Copperweld case, there's no question that a – that the interests of a pre-prank subsidiary of a carbon fiber manufacturer are aligned and are considered to be one and the same. So the fact that there were subsidiaries of carbon fiber manufacturers that were sitting at the table, often in the person, as you see in this complaint, of the same business executive who ran both companies, the fact that they were both at the table only proves our point that these particular carbon – pre-prank co-conspirators were there because they had a unique economic motive to be involved in that. I think we understand the argument. Thank you very much. Thank you. We congratulate both sides of the new antitrust regime in Washington. I'm sure you'll be very wealthy very soon. Thank you. Well, your Honor, it's important for us to have good – for our economy to be working well, it's good for us to have good enforcement of our antitrust laws. The seal case is submitted and with that, the Court stands adjourned. All right.  Thank you, Your Honor. Thank you. Okay.  This Court stands adjourned.
judges: Bright, Bybee, Smith M.